Billy J. SCOGGINS; Danny Martin;
Sanford Walker; Samuel Butler
and Lanny Heilman, Plaintiffs,

v.

Frank MOORE, Commissioner of Bartow County, Georgia, Defendant.

Civ. A. No. C82–67R.

United States District Court,
N.D. Georgia,
Rome Division.

Jan. 20, 1984.

Daniel Levy, Atlanta, Ga., for plaintiffs.

G. Carey Nelson, Cartersville, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

Two motions are presently before the Court in this case: the plaintiffs' motion to amend their complaint under Fed.R.Civ.P. 15(a), and the defendant's motion for summary judgment under Rule 56. The motion to amend is denied because it is untimely and futile, and the motion for summary judgment is granted.

## I. BACKGROUND

The plaintiffs are citizens of Bartow County, Georgia. The defendant, Frank Moore, is the sole County Commissioner for Bartow County. He is vested with the exclusive authority to issue retail malt-beverage licenses in this county. *See* GA. CODE ANN. §§ 5A–501, 502, 4303, 5301 (Harrison 1981). The plaintiffs applied for malt-beverage licenses on January 20, 1982, and their requests were denied by the defendant in writing on February 17, 1982.[1] Because of this denial, the plaintiffs filed the present action.

In their four-count complaint, the plaintiffs first allege that "there are in fact at least three outlets for the dispensing of malt beverages operating within [Bartow] County, ... [and that these] facilities operate with the ... permission, tacit or express, of the Defendant." Plaintiff's Complaint at 3. The plaintiffs therefore claim that the defendant's denial of their licenses violates their fourteenth amendment right to equal protection. The plaintiffs next contend that the denial of their licenses by the defendant violates their due process rights because he gave "no valid and legal reason for denying a license to the Plaintiffs." *Id.* In the third count of their complaint, the plaintiffs argue that because retail malt-beverage licenses are issued in two incorporated areas within Bartow County—i.e. the cities of Kingston and Cartersville—the defendant's denial of their

---

1. The defendant informed the plaintiffs of the denial of their licenses by letter on February 17, 1982. Each plaintiff received a letter which stated:

Pursuant to Georgia Code Annotated Sections 5A–501, 502, 4301 and 5301, it is my policy to deny all applications for beer and wine licenses. I therefore deny your request for said licenses.

application violates their fourteenth amendment right to equal protection. Finally, the plaintiffs contend that because the defendant has not promulgated any standards for the granting or denial of retail malt-beverage licenses, their due process and equal protection rights have been violated.

In a previous order the Court granted a motion for summary judgment on the third count of the plaintiffs' complaint. *See Scoggins v. Moore*, Civ. No. 82–67R (N.D.Ga. July 20, 1982). The motions presently before the Court thus consist of 1) the plaintiffs' motion to amend their complaint under Fed.R.Civ.P. 15(a), and 2) the defendant's motion for summary judgment on Counts One, Two and Four of the plaintiff's complaint.

## II. THE MOTION TO AMEND

In their motion to amend their complaint, the plaintiffs seek to add Donald Thurman, the Sheriff of Bartow County, as a defendant to this action. They seek to add Thurman as a party "so that complete relief may be accorded to the parties" and "[so that] the defense [that Moore] is not involved in the law enforcement aspects of County government ... can be better adjudicated...." Plaintiffs' Motion to Amend at 1–2. The plaintiffs also seek to add to their complaint the allegation that Moore has allowed the City of Cartersville to expand its boundaries by "artery annexation ... for the sole purpose of expanding [its] beer and wine sales." Proposed Amended Complaint at 6. They contend that this acquiescence is "patently violative of Constitutional standards." *Id.*

■ Fed.R.Civ.P. 15(a) provides that leave to amend pleadings should be granted freely when justice so requires. "In deciding whether to grant leave to amend, [a] district court must take into account several [considerations,] such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and the] futility of the amendment.' " *Bamm, Inc. v. GAF Corp.*, 651

F.2d 389, 391 (5th Cir.1981) (Unit B) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); *see Brown-Marx Associates LTD. v. Emigrant Savings Bank*, 703 F.2d 1361, 1371 (11th Cir. 1983). A district court may also consider "whether undue prejudice to the movant will result from denying leave to amend." *Bamm, supra.* The decision to allow leave to amend lies within the discretion of the trial court and will be overturned only for an abuse of this discretion. *See Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 586 (11th Cir.1983).

■ The Court will deny the plaintiff's proposed amendments for two reasons. First, the motion to amend is untimely. It was filed nearly one-year after the complaint was filed in this lawsuit. In the interim period not only have motions for summary judgment, reconsideration, a protective order and relief from judgment been decided, but substantial discovery has occurred. *See Local 472 v. Georgia Power Co.*, 684 F.2d 721, 724–25 (11th Cir.1982).

Second, the proposed amendments are futile. The plaintiffs seek to add Thurman as a party to ensure that "complete relief may be afforded" and so that the defense that Moore "is not involved in the law enforcement aspects of County government can be better adjudicated." The relief the plaintiffs seek—the issuance of malt-beverage licenses and the promulgation of standards for the issuance of such licenses—can be obtained without adding Thurman as a defendant because Moore is the county officer with the authority to perform both these tasks. *See* GA.CODE ANN. § 5A–502 (Harrison 1981). Furthermore, any defense relating to Moore's lack of involvement in law enforcement matters in Bartow County can be adequately developed by calling Moore and Thurman to the witness stand. Finally, the proposed allegation regarding Moore's acquiescence to the artery annexation conducted by the City of Cartersville is futile because it does not state an actionable claim. *See Scoggins,*

*supra*, at 3–4; *see generally Trustees of Mortgage Trust v. Holland*, 554 F.2d 237, 239 (5th Cir.1977).

### III. THE SUMMARY JUDGMENT MOTION

The remaining motion before the Court is the defendant's motion for summary judgment brought pursuant to Fed.R.Civ.P. 56(c).[2] In ruling on a previous motion for summary judgment filed by the defendant, the Court held that the third count of the plaintiffs' complaint, which alleged that the plaintiffs' equal protection rights were violated by the granting of malt-beverage licenses in incorporated areas of Bartow County, was without merit. *See Scoggins, supra* at 4. The present motion for summary judgment therefore concerns only the issue whether the plaintiffs' fifth and fourteenth amendment rights to due process and equal protection were violated by the denial of their retail malt-beverage licenses.

### A. *The Equal Protection Claim*

The plaintiffs' equal protection claim is different than most equal protection claims brought in alcoholic-beverage license cases. Usually, a commissioner grants licenses to some, but not all, applicants for a license, and a disgruntled applicant alleges an equal protection violation. *See Hornsby v. Allen*, 326 F.2d 605 (5th Cir.1964); *cf. Trustees, supra* (liquor licenses limited to certain business zones within county). In this case the plaintiffs raise an equal protection claim against a commissioner who has never granted a malt-beverage license.

They nevertheless contend that their equal protection rights were violated because the commissioner tacitly allows malt beverages to be sold in Bartow County while formally denying malt-beverage licenses.

The evidence the plaintiffs have produced in support of this contention consists of 10 affidavits. One of these affidavits is given by Robert Garmon, a deputy sheriff in Bartow County from 1972 to 1979 and a resident of this county for over 20 years. In his affidavit Garmon states that two lounges—the American Legion Post and Queenie's Place—have sold malt beverages to their patrons during Moore's tenure in office. According to Garmon, the sale and consumption of malt beverages at these locations has been open and notorious.

The remaining affidavits were procured from malt-beverage license applicants who attended a meeting at the defendant's office on January 21, 1982. The meeting concerned their malt-beverage license applications. These applicants state that the defendant made the following statement during this meeting:

> I have no objection to issuing beer licenses, as a matter of fact I would love to have the revenue off of it; I know several people in Bartow County that sell beer in Bartow County without a license, [but] I'm not going to call any names.

E.G., Affidavit of Boyd Morris at 1. The defendant denies that he made this statement. *See* Affidavit of Moore at 1. He admits, however, that beer and wine are probably being sold illegally in Bartow County.[3]

---

**2.** Rule 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). "In assessing whether the movant has met this burden, ... the evidence and all [reasonable] factual inferences [should be viewed] in the light most favorable to the party opposing the motion" *Clemons v. Dougherty County*, 684 F.2d 1365, 1368 (11th Cir.1982); *Wilson v. Taylor*, 658 F.2d 1021, 1027 (5th Cir. 1981) (Unit B). And in deciding a motion for summary judgment, "it is no part of the [trial]

court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried." *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983).

**3.** In his affidavit, the defendant states:

> Obviously, beer and wine are being sold illegally in the unincorporated areas of the County. I would be naive to believe that this kind of activity does not occur. I may have even made a statement to this effect.
>
> However, I do not have any personal knowledge of anyone selling beer and wine in Bartow County nor have I consented to or acquiesced to such conduct and I trust that

■ Construing these facts most favorably to the plaintiffs, the Court finds that the defendant is personally aware of illegal wine and beer sales in Bartow County. In light of this finding, the issue raised by the plaintiffs' equal protection claim becomes the following: whether the personal knowledge of the defendant of illegal malt-beverage sales at retail establishments in the county in which he is vested with the authority to grant or deny malt-beverage licenses, combined with the commissioner's denial of malt-beverage licenses to all formal applicants for such licenses, violates a formal applicant's right to equal protection. The Court holds that the applicant's equal protection rights are not violated by this practice because of a combination of two considerations. First, the defendant has no authority to close down malt-beverage establishments which operate illegally in Bartow County. This authority is vested solely in the Sheriff of Bartow County, Thurman. *See e.g., Elder v. Camp,* 193 Ga. 320, 322–23, 18 S.E.2d 622 (1942).[4] Second, the plaintiffs have not demonstrated anything more than Moore's knowledge of illegal malt-beverage sales in Bartow County. They have not, for example, shown, circumstantially or otherwise, that Moore took any affirmative steps to deter Thurman from closing establishments which illegally dispense malt-beverages.[5] Thus, the Court holds that Moore has not violated the plaintiffs' equal protection rights because he is not responsible for, nor can he prevent, the differential treatment accorded the plaintiffs and the individuals who sell malt beverages illegally in Bartow County.

**B. *The Due Process Claim.***

In addition to their equal protection claim, the plaintiffs have raised a due process claim. They contend that the defendant's failure to promulgate any standards governing the issuance of malt-beverage licenses violates procedural due process.

■ In order to invoke the protections of the due process clause, a person must possess a constitutionally protectible liberty or property interest. *See Board of Regents v. Roth,* 408 U.S. 564, 572, 576–78, 92 S.Ct. 2701, 2706, 2708–09, 33 L.Ed.2d 548 (1971); *Durham v. Jones,* 698 F.2d 1179, 1181 (11th Cir.1983). The plaintiffs would possess a protectible liberty interest if the denial of their malt-beverage licenses was attended by stigmatizing circumstances "which 'might seriously damage [their] standing and associations in [their] community' or foreclose '[their] freedom to take advantage of other [business opportunities].'" *Clemons v. Dougherty County,* 684 F.2d 1365, 1371 (11th Cir.1982) (quoting *Dennis v. S & S Consolidated Rural High School Dist.,* 577 F.2d 338, 342–43 (5th Cir.1978)). The only possible stigmatizing circumstance surrounding the denial of the plaintiffs' licenses is an article published in the Cartersville, Georgia newspaper which describes the rejection of their applications by the defendant. *See* The Daily News Tribune, Feb. 23, 1982, at 1, col. 1. This

---

our law enforcement agency is doing an effective job to combat such illegal activity.

**4.** Ga.Code Ann. § 5A–4504 does not appear to alter this conclusion. Under section 5A–4504 "any malt beverage possessed, sold or offered for sale by a retail dealer which was ... acquired from a ... wholesale dealer [who is not] authorized to do business [under § 5A–4501 to 10] ... shall be seized by the Commissioner or the *appropriate local authorities* ..." (emphasis added). The reference to the "Commissioner" means the State Commissioner of Revenue. Further, the reference to "appropriate local authorities" does not appear to vest the power of seizure in a county commissioner, but rather to vest the power of seizure in the person who is traditionally responsible for the enforcement of the laws of a county—the county sheriff.

**5.** The Court notes that the plaintiff has not alleged an actionable conspiracy between Moore and Thurman under either section 1983 or 1985(3). Had the plaintiffs done so, and had they supported such an allegation with competent proof, they may have prevailed on their motion for summary judgment. *See generally Reed v. Village of Shorewood,* 704 F.2d 943, 949 (7th Cir.1983) (a municipal officer cannot do indirectly that which he is not entitled to do directly); *Hornsby, supra,* at 609–10 ("If one applicant for a [liquor] license is preferred over another equally qualified applicant as a political favor or as the result of a clandestine arrangement, the disappointed applicant is injured, but the injury to the public is much greater").

short article, however, merely describes, in a matter-of-fact manner, the defendant's decision to deny the malt-beverage licenses. It also contains a list of the applicants who were denied licenses. This article does not stigmatize the plaintiffs to such an extent that it gives rise to a protectible liberty interest. *Compare Clemons, supra,* at 1371–73 (allegations levelled against a police officer, which included the charge that he improperly used police facilities to investigate a neighbor's criminal record, held to be potentially stigmatizing).

A constitutionally protectible property interest can arise by reason of a contract, statute, ordinance or mutually recognized entitlement. *See, e.g., Perry Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).[6] To determine the sufficiency of a property interest, reference must be made to state law. *See Bishop, supra.*

In this case no contract exists which would create a protectible property interest. GA.CODE ANN. § 5A–502 (Harrison 1981) also does not create a protectible property interest. Section 5A–502 outlines

the state-law procedural requirements that govern the decision to grant or deny a malt-beverage license.[7] One such requirement is that the "governing authority [of a county] *shall set forth ascertainable standards in the local licensing ordinance* upon which all decisions pertaining to [malt-beverage] permits or licenses shall be based...." *Id.* § 5A–502(b)(1) (emphasis added).[8] Section 5A–502 does not create a protectible property interest because it merely requires the promulgation of standards for the issuance of a malt-beverage license. It does not itself outline standards which, if met, would lead to the issuance of a malt-beverage license. Thus, Section 5A–502 does not create the concrete expectation necessary for the creation of a constitutionally protectible property interest. *See generally Durham, supra,* at 1180–81; *Shamie v. City of Pontiac,* 620 F.2d 118, 120–21 (6th Cir.1980).

If an ordinance, which outlined standards for the issuance of a malt-beverage license, was promulgated pursuant to section 5A–502, the plaintiffs would probably possess a protectible property interest. *See Durham, supra,* at 1181. Further, if the defendant adopted a policy of denying all

6. A "plaintiff must show a mutually recognized entitlement, as opposed to a unilateral expectation of a benefit, to establish the existence of a property interest." *Durham, supra* at 1181.

7. Section 5A–502 provides in full:
(a) Except as otherwise provided for in this Title, the manufacturing, distributing, and selling by wholesale or retail of alcoholic beverages shall not be conducted in any county or incorporated municipality of this State without a permit or license from the governing authority of such county or municipality. Each such local governing authority is hereby given discretionary powers within the guidelines of due process as defined in this section as to the granting or refusal and any suspension or revocation of such permits or licenses.
(b) The granting or refusal and the suspension or revocation of the permits or licenses shall be in accordance with the following guidelines of due process:
(1) The governing authority shall set forth ascertainable standards in the local licensing ordinance upon which all decisions pertaining to these permits or licenses shall be based;
(2) All decisions approving, denying, suspending, or revoking such permits or licenses shall

be in writing, with the reasons therefor stated, and mailed or delivered to the applicant;
(3) Upon timely application, any applicant aggrieved by the decision of the governing authority regarding a permit or license shall be afforded a hearing with an opportunity to present evidence and cross-examine opposing witnesses.
(c) As a prerequisite to the issuance of any such permit or license, the application shall furnish a complete set of fingerprints which shall be forwarded to the Georgia Bureau of Investigation who shall search the files of the Georgia Crime Information Center for a period of two years immediately preceding the date of such application for any instance of criminal activity. The Georgia Bureau of Investigation shall also submit such fingerprints to the Federal Bureau of Investigation under the rules established by the United States Department of Justice for processing and identification records. The Federal record, if any, shall be obtained and returned to the governing authority submitting such fingerprints.

8. In this case the "governing authority" is the defendant.

malt-beverage licenses despite such an ordinance, the defendant would appear to have violated the minimal procedural due process guarantees found in the fourteenth amendment which attach to a malt-beverage license application proceeding. *See Southern Cooperative Development Fund v. Driggers,* 696 F.2d 1347, 1352 (11th Cir. 1983); *Hornsby v. Allen,* 326 F.2d 605, 608–10 (5th Cir.1964); *Smith v. Thompson,* 377 F.Supp. 556, 557 (M.D.Ga.1974). No such ordinance, however, exists. This fact, combined with the consistent denial of malt-beverage licenses by the defendant, leads to the conclusion that the plaintiffs do not possess a protectible property interest. *See Durham, supra; Shamie, supra.*[9]

The plaintiffs raise an imaginative, but unavailing, argument regarding whether they possess a protectible property interest in obtaining a malt-beverage license. They argue that because it is common knowledge that several establishments in Bartow County dispense malt-beverages, the ability to obtain a license for the sale of such beverages has become a mutually recognized entitlement. *See* Plaintiff's Supplemental Reply to the Motion for Summary Judgment at 12–13. The ability to obtain a license for the sale of malt beverages cannot be considered a mutually recognized entitlement, however, in view of the fact that Moore has never issued such a license.

ACCORDINGLY, the plaintiffs' motion to amend is DENIED. The defendant's motion for summary judgment is GRANTED.

---

**9.** The plaintiffs may have a cause of action in the Georgia courts for a violation of section 5A–502 because Moore has not promulgated an ordinance pursuant to this section. A violation of section 5A–502 does not necessarily mean that federal due process guarantees have been violated. *See Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983).