**ATLANTA BOWLING CENTER, INC.
and Elizabeth Lane Johnston,
Appellants,**

v.

**Ivan ALLEN, Jr., Mayor of the City of
Atlanta et al., Appellees.**

**No. 24706.**

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1968.

John W. Chambers, Hoke Smith, Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., for appellants.

John E. Dougherty, Henry L. Bowden, Atlanta, Ga., for appellees.

Before BROWN, Chief Judge, and FAHY* and DYER, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Invoking *Hornsby*,[1] a case mistakenly thought by too many to be a pledge that if local authorities would not, a Federal Court would, grant a liquor license, Bowling Center, Inc.,[2] in the name of the Constitution, sought unsuccessfully a mandatory Federal Court order compelling the Board[3] to issue a license to the Boom Boom Room.

Testing that, the sole issue presented here is whether Bowling Center was denied due process and equal protection of the laws under the Fourteenth Amendment in the Board's denial of a license to sell liquor by the drink in a club located in the bowling alley operated by Bowling Center in Atlanta, Georgia. The District Court, although dismissing the complaint "without prejudice" on the court-suggested ground of a lack of federal jurisdiction, in effect held that Bowling Center was not denied either due process or equal protection.[4] We affirm,

---

* Senior Circuit Judge of the D.C. Circuit, sitting by designation.

1. Hornsby v. Allen, 5 Cir., 1964, 326 F.2d 605.

2. Atlanta Bowling Center, Inc. The term includes Appellant, Mrs. Johnston, the agent.

3. The term as used by us covers the Board of Alderman and the Mayor.

4. Although submitted by the parties on Bowling Center's motion for summary judgment, the Judge declined to rule on it. Instead he held that Bowling Center's allegation that it was denied equal protection because of the Board's denial of a license to it while granting licenses to other applicants did not state a claim within the jurisdiction of the Court since it did not allege discrimination on grounds of race, or other classification. He rejected

but on different grounds calling for some elaboration.

The facts, not being in dispute, may be severely capsulated. Bowling Center applied for a license to sell distilled spirits by the drink in the Boom Boom Room, a nightclub to be located in a bowling alley. The Board does not dispute that Bowling Center met the requirements such as seating capacity, moral character, and other similar standards prescribed by the City Ordinances. But on May 2, 1966, the Board by resolution denied the application for five stated reasons.[5] The Board, acknowledging also as it must, that these reasons are not expressly articulated in the Ordinance, nonetheless asserts that all or some are within Section 5–97.[6]

On the basis of these facts, Bowling Center makes a double constitutional assault. First, it contends, the Board violated due process when it denied the license on a basis not promulgated in the ordinance. Second, either independently or as an off-shoot of the first, it asserts that the Board denied Bowling Center equal protection of the laws by granting licenses to others who meet all requirements expressed in the ordinance while denying a license to Bowling Center. As authority for these propositions, Bowling Center relies, as do all other unsuccessful aspirants,[7] on our now famed decision in Hornsby v. Allen, 5 Cir., 1964, 326 F. 2d 605.[8] That case,[9] important as it is in its insistence that state licensing of activities even so traditionally amenable to

the claim of denial of due process since the denial of a liquor license by the Board, assigning reasons for the denial not within the ordinance, would constitute only "arbitrary" action which did not rise to constitutional proportions. The Judge also emphasized that there was no constitutional attack, as such, on the regulatory ordinance. Although we think the Judge's approach missed the thrust of Bowling Center's thesis—compliance with all standards prescribed, but license denied although not to others similarly qualifying—we need not express any opinion as to the correctness of these conclusions. This is so because we hold that on the undisputed facts presented here, the reasons stated for the denial are encompassed by a liberal reading of the ordinance setting up the applicable standards. Since we reach the merits of the controversy, Bowling Center's complaint must be dismissed with prejudice on the merits. See Wright, Federal Courts § 18, at 55 and the cases cited at n. 18.

5. "1. That the location was not a suitable place for this type of operation.
"2. That a night club operation at this location was not in the best interest of the operator of the bowling alley nor the patrons who come there.
"3. That the granting of such a license would transform a family recreation center to a night club operation.
"4. That by reason of being used with a bowling alley operation and in connection with the operation of a skating rink and amusement park, that the location generally attracted minors to the area.

"5. That no license to operate a night club in conjunction with a bowling alley has ever been issued by the City of Atlanta."

6. The pertinent provisions read:
"In determining whether or not any license applied for hereunder shall be granted, the following shall be considered in the public interest and welfare:
* * *
(d) Location. The location for which the license is sought as to traffic congestion, general character of neighborhood, and the effect such an establishment would have on the adjacent and surrounding property values."
Section 5–97 of Vol. II of the 1965 Code of Ordinances of the City of Atlanta.

7. Chesser v. Johnson, 5 Cir., 1967, 387 F.2d 341 [December 20, 1967]; Moran v. Carswell, 5 Cir., 1967, 384 F.2d 720; Moon v. City of Athens, 5 Cir., 1967, 374 F.2d 887; Crews v. Undercofler, 5 Cir., 1967, 371 F.2d 534.

8. See 1 Davis, Administrative Law § 7.18 (Supp.1965).

9. It is not without its critics. See, e. g., Lewis v. City of Grand Rapids, 6 Cir., 1966, 356 F.2d 276. Also the question of jurisdiction under the Civil Rights Act, 42 U.S.C.A. § 1983, 28 U.S.C.A. § 1343(3), there found to exist with no challenge on a distinction between property rights and personal rights, but raised subsequently, see Bussie v. Long, 5 Cir., 1967, 383 F.2d 766, 769, has not yet been resolved since the jurisdictional dollar amount under 28 U.S.C.A. § 1331

the widest discretion as the liquor business is subject to the minimal demands of the Fourteenth Amendment's due process and equal protection requirements, is far from a holding that the Federal Courts sit as a super liquor board or a sort of extra-hierarchial appellate court in the stream of state jurisprudence to review non-constitutional errors of substance or procedure made by state licensing agencies.

█ Within the teachings of *Hornsby* the case comes down to whether Section 5–97 (note 6 supra) arguably furnishes a sufficient basis upon which an applicant would reasonably have to anticipate that the Board would consider and then act upon all or some of the five factors assigned for the denial. (see note 5 supra). If it does, then it meets the requirements of "ascertainable standards * * * by which an applicant can intelligently seek to qualify for a license * * *." Hornsby v. Allen, supra, 326 F.2d at 612. See Crews v. Undercofler, 5 Cir., 1967, 371 F.2d 534. And this is so even if, because of draftsmanship, this leaves open much room for interpretation, including *mis*interpretation, by the state agency.[10]

The ordinance lacks, to be sure, much in the way of precision, but we think it passes muster. Its introductory paragraph expressly emphasizes "public interest and welfare" and sub-paragraph (d) is styled "location" and speaks in terms of the relation of such location to other activities, properties and the uses of them. It is true, of course, that it does not mention bowling alleys, night clubs, family recreational centers, or the like. But to this the Board responds that it would be an impossibility to set out in the liquor ordinances all the places where it would be inappropriate for liquor to be consumed by the drink. For example, the Board points out that no provision in the ordinance prohibits selling liquor by the drink in a church, a school, or myriad other places where it is simply just not in "the public interest and welfare" for liquor to be sold.

In the setting of this case [11] the ordinance put the applicant on fair notice. This reading [12] of the ordinance takes into account the fact that the traditional local interest in regulating the liquor business calls for the use of broad discretion and flexible procedures. See

---

invariably is satisfied. See also Hague v. CIO, 1939, 307 U.S. 496, 529–532, 59 S.Ct. 954–972, 83 L.Ed.2d 1423, 1432–1445; Detroit Edison Co. v. East China Township School Dist. No. 3, 6 Cir., 1967, 378 F.2d 225, 228.

10. We need not assay just when state interpretation orbits to a constitutional apogee, but in passing we note what was said by the Eighth Circuit in Wallach v. City of Pagedale, 1967, 376 F.2d 671, 674:

"[T]he claim is made that the plaintiff's business does not fit the classifications covered by the ordinances. It would appear that the questions raised primarily relate to the interpretation of the ordinances and that such questions are questions of state law."

On this basis the Court then affirmed dismissal of the complaint for failure to allege a federal question.

11. Bowling Center's unsuccessful motion for summary judgment necessarily urging the absence of any material factual controversy, F.R.Civ.P. 56(c), presumably did not challenge the Board's summary

of the hearings on the application. The proposed night club was to be located in the same building housing a bowling alley and to have an entrance into a common corridor to be used for both the bowling alley and "The Boom Boom Room". There is a skating rink and an amusement part in immediate proximity to the location of the proposed bar. The bowling alley was frequented largely by teenagers. And the bowling alley was operated adjacent to and in conjunction with an amusement park shown as Funtown.

12. The closest case in point is Pollack v. Simonson, 1965, 121 U.S.App.D.C. 362, 350 F.2d 740. In that case the Court noted that the denial of a liquor license because the Board did not think that stores should be closer than three hundred feet even though no distance requirements are stated in the District Code, would not constitute a violation of due process in the light of other provisions of the code granting some measure of discretion to the licensing authority.

Lewis v. City of Grand Rapids, 6 Cir., 1966, 356 F.2d 276.

■■ To the extent the equal protection claim is not just a variation of attack already disposed of, it affords no basis for reversal. There was no factual showing that other bowling alleys contain night clubs selling liquor by the drink. Nor was there any effort to show factual circumstances on which to rest the suggestion made on brief and argument that liquor facilities at Atlanta's new stadium either permits or requires a conclusion of impermissible distinction. The Equal Protection Clause does not take the power away from the States to make classifications. It commands only that the classifications not be arbitrary. See Morey v. Doud, 1957, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485. See also Mayhue v. City of Plantation, 5 Cir., 1967, 375 F.2d 447, 450.

The Bowling Center failed on the merits in its constitutional assault and the judgment must be modified accordingly (see note 4 supra).

Modified and affirmed.